IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| AAIRAH FORD ET AL., | * |
| Plaintiffs, | * |
| v. | * |
|  | *   Civil No. 24-3414-BAH |
| RED ROOF INNS, INC., ET AL., | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Pro se plaintiffs Aairah Ford and Nathan Ford ("Plaintiffs") filed suit[1] against Red Roof Inns, Inc. ("Red Roof Inn"), Michaela Randle ("Randle"), Michael Kenneth Johnson ("Johnson"), and James Ross ("Ross") (collectively "Defendants") seeking compensatory and punitive damages related to a series of events occurring on November 3, 2024 at a motel in Annapolis, Maryland. ECF 16 (amended complaint). Pending before the Court is Defendants' motion to dismiss the amended complaint. ECF 29 (motion); ECF 29-1 (memorandum of law in support). Plaintiffs responded (ECF 31) after receiving a Rule 12/56 Notice from the Court (ECF 30). Plaintiffs also filed a physical exhibit—"an audio recording of a 911 call made by Defendant [Randle]" the night of the incident. ECF 33, at 1. Defendants filed a reply. ECF 36. The Court has reviewed all relevant filings and finds that no hearing is necessary. See Local Rule 105.6 (D. Md. 2025). For

---

[1] Plaintiffs filed an original complaint on November 26, 2024. ECF 1. An amended complaint, ECF 16, was timely filed after Defendants filed a motion to dismiss Plaintiffs' initial complaint. See ECF 14. "[A]n amended pleading ordinarily supersedes the original and renders it of no legal effect." Young v. City of Mt. Ranier, 238 F.3d 567, 572 (4th Cir. 2001) (quoting Crysen/Montenay Energy Co. v. Shell Oil Co., 226 F.3d 160, 162 (2d Cir. 2000)). Accordingly, the motion to dismiss the original complaint (ECF 14) was denied as moot. ECF 40, at 1 n.1.

the reasons noted below, the motion is **GRANTED**, and the Court dismisses Plaintiffs' claims that arise under federal law with prejudice. The Court declines to exercise jurisdiction over the remaining state law claims and thus dismisses them without prejudice.

## I.     FACTUAL BACKGROUND

The following facts are drawn from Plaintiffs' amended complaint, which the Court will "accept as true . . . and construe [] in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Plaintiffs allege that they checked into the Red Roof Inn in Annapolis on November 3, 2024 for a "prepaid five-night stay as an extension to their previous four day stay in the same room." ECF 16, at 4 ¶ 9. Randle was allegedly worked at the Red Roof Inn, as did Johnson. *Id.* ¶¶ 6–7. Ross was the general manager. *Id.* ¶ 8.

Plaintiffs allege that they were "subjected to racially discriminatory and hostile treatment" throughout their stay "[d]espite complying with hotel policies and displaying courteous conduct[.]" *Id.* ¶ 10. Plaintiffs allege that they arranged "with Defendant [Johnson]" for housekeeping service to be provided at noon every day. *Id.* ¶ 11. After Aairah Ford told Johnson that she might not need the daily service, Johnson explained that hotel staff needed to enter Plaintiffs' room regardless because staff "needed to check Plaintiffs' room" because they "know people 'be cooking in the rooms,'" an apparent reference to alleged illegal drug activity. *Id.* ¶ 12 (emphasis omitted). This comment "[o]ffended" Aairah Ford who "returned to her room feeling dirty and belittled" but nonetheless "agreed to housekeeping coming at noon." *Id.*

After housekeeping arrived late, Aairah Ford declined the service. *Id.* at 5 ¶ 13. Later, Johnson allegedly "starting knocking on the door . ... demanding immediate access to the room." *Id.* ¶ 14. When Aairah Ford did not open the door, Johnson began "banging on the door in a

2

disruptive and aggressive manner." *Id.* ¶ 15. The matter escalated to involve Nathan Ford, who allegedly made contact with Johnson's arm that Plaintiffs describe as a "gentle reach" that was "neither aggressive nor intended to cause distress." *Id.* ¶ 16. Plaintiffs allege that Johnson "shouted that both Plaintiffs were being loud and aggressive when in fact [Johnson] was the only one yelling or reacting hostile [sic] toward Plaintiffs for their innocent assertions of reasonable privacy expectations by two black Plaintiffs who just wanted to know why they were being kicked out of their room." *Id.*

Though it is unclear precisely when she got involved, Randle joined the encounter and Johnson and Randle "called police claiming Plaintiffs were being loud and acting 'aggressively.'" *Id.* ¶ 17. Plaintiffs allege that "[i]t was clear [that Johnson and Randle] suspected Plaintiffs of being criminals, simply because of the color of their skin and a reasonable request for privacy throughout their stay coupled with bad timing on [h]ousekeeping." *Id.* Plaintiffs allege that Randle and Johnson demanded that they leave the Red Roof Inn immediately. *Id.* at 6 ¶ 19. Plaintiffs claim that after police arrived, Plaintiffs agreed "to vacate the premises to avoid being arrested and getting their children taken away by Child Protective Services." *Id.* at 5 ¶ 18. Aairah Ford allegedly asked Randle to allow Plaintiffs and their children to remain, but the request was denied. *Id.* at 6 ¶ 19. Police purportedly warned Plaintiffs that that they "needed to leave" and "if Plaintiffs returned to the Red Roof Inn" they would be arrested for trespassing. *Id.* ¶ 20. Plaintiffs claim they "were promised a full refund within 2-5 days," but the refund "never came." *Id.* ¶ 19.

After Plaintiffs did not vacate the premises quickly enough, Randle allegedly called police again alleging that Plaintiffs were "trespassing." *Id.* ¶ 21. Plaintiffs allege that Randle was not truthful with police given that Plaintiffs were "packing up their car" and engaged in a "clear good faith retreat" and "not a trespass." *Id.* Plaintiffs allege that the second call to police "led to the

3

involvement of crisis intervention personnel, further confirming the racially charged and discriminatory treatment Plaintiffs endured." *Id.* ¶ 22.

Plaintiffs allege they received only a "partial refund" of their "unused nights." *Id.* ¶ 23. When Aairah Ford tried to contact Ross the following day, Ross allegedly ignored her demands and "issued an email denying the occurrence of racial discrimination, stating that Plaintiffs were banned from the property without providing any explanation." *Id.* at 6–7 ¶¶ 24–25. Plaintiffs allege that the incident that marred their stay at the Red Roof Inn caused them "extreme emotional and physical distress" and "forced [them] to spend the night in their vehicle." *Id.* at 7 ¶ 27. A few days later, Nathan Ford alleges he "experienced a mental health breakdown," which resulted in his hospitalization. *Id.* ¶ 29. Plaintiffs contend that "Defendants' conduct was racially motivated and intended to cause them harm and humiliation." *Id.* ¶ 28.

The amended complaint asserts racial discrimination in violation of state and federal law against Johnson and Randle (Count I); intentional infliction of emotional distress against Johnson and Randle (Count II); negligence as to all Defendants (Count III); false statements to law enforcement in violation of Md. Code Ann., Crim. Law § 9-501 against Johnson and Randle (Count IV); breach of contract against Red Roof Inn (Count V); defamation against Johnson and Randle (Count VI); obstruction of justice in violation of Md. Code Ann., Crim. Law § 9-306 against Johnson and Randle (Count VII); and conversion against Red Roof Inn (Count VIII). ECF 16, at 7–15. Plaintiffs also attach a number of documents to the amended complaint including a police report, ECF 16-2; records and emails from the Red Roof Inn, ECF 16-3, at 1–5, and a 2024 annual report created by Red Roof Inn's corporate parent, *id.*, at 6–19.

4

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

The Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted).

Because Plaintiffs bring this suit pro se, the Court must liberally construe the pleadings, holding them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This leniency has its limits, though. "A court may not construct the plaintiff's legal arguments for him, nor is a district court required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Runge v. Barton*, No. CIVA 6:08-0231-GRA, 2009 WL 3245471, at *1 (D.S.C. Oct. 2, 2009) (first citing *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), then quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)), *aff'd*, 368 F. App'x 361 (4th Cir. 2010).

### III. ANALYSIS

#### A. Plaintiffs' federal claims of racial discrimination are dismissed with prejudice.

Plaintiffs first allege racial discrimination on the part of Johnson and Randle in violation of 42 U.S.C. § 1981, Title II of the Civil Rights Act of 1964 (42 U.S.C. § 2000a), and Md. Code Ann., State Gov't § 20-304. "Section 1981 establishes that '[a]ll persons . . . have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens.'" *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006) (quoting 42 U.S.C. § 1981(a)).[2] Defendants

---

[2] Defendants construe Plaintiff's allegations as "relating to the purchase of goods or services." ECF 29-1, at 6. Plaintiffs respond by citing to cases alleging discrimination in hotel accommodations. ECF 31, at 4 (citing *Heart of Atlanta Motel, Inc. v. United States of America*, 379 U.S. 241 (1964)). The elements of each claim are nearly identical. *See Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004) ("To establish a prima facie case of discrimination in a § 1981 cause of action relating to the purchase of goods or services, [a plaintiff] must establish that: (1) he is a member of a protected class; (2) he sought to enter into a contractual relationship with the defendant; (3) he met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (4) he was denied the opportunity to contract for goods or services that was otherwise afforded to white customers."); *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001) ("A plaintiff makes out a prima facie case under § 1981 of discrimination in hotel accommodations when she demonstrates that (1) she is a member of a protected class, (2) she sought to enter into or had a contract with a hotel for accommodations, (3) she met the hotel's standard requirements for occupancy, and (4) she was denied accommodations that were available to guests outside of the protected class."). "To prove a § 1981 claim, therefore, a plaintiff must ultimately establish both

contend that these claims must be dismissed primarily because "[n]one of the factual allegations in Count I of the Amended Complaint or any of the factual allegations that Plaintiffs incorporate therein constitute direct evidence of racial discrimination." ECF 29-1, at 8. The Court agrees.

In raising a claim under § 1981, "[a] plaintiff must [] show that the interference with a contractual interest would not have happened but for the plaintiff's race." *Nanendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (citing *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327 (2020)). Though not required to present a prima facie case at this early stage of litigation, to survive a motion to dismiss a § 1981 claim, "a plaintiff must initially plead [ ] that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp.*, 589 U.S. at 341. "A plaintiff must make more than a general statement that he was treated differently as a result of race." *Asi v. Info. Mgmt. Grp., Inc.*, Civ. No. GLR-18-3161, 2019 WL 4392537, at *6 (D. Md. Sept. 13, 2019) (citing *Robinson v. Loudon Cnty. Pub. Schs.*, 2017 WL 3599639, at *4 (E.D. Va. Aug. 18, 2017)).

Plaintiffs clearly allege that they are Black, thus satisfying the first element of their race discrimination claims. ECF 16, at 8 ¶ 35. However, they do little more than make general and conclusory statements that their unquestionably uncomfortable treatment on November 3, 2024 was attributable to their race. *See, e.g., id.* at 4 ¶ 10 ("Plaintiffs were subjected to racially discriminatory and hostile treatment."); *id.* ¶ 12 (alleging "that they did not feel comfortable with an intrusion of privacy, especially after being accused of 'cooking' drugs in their hotel room due to the stereotypes of their race" (emphasis omitted)); *id.* at 5 ¶ 17 (alleging that calling police "further worsen[ed] the encounter and create[ed] an atmosphere of racial discrimination"); *id.* ("It

---

that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." *Denny*, 456 F.3d at 434.

was clear [Defendants] suspected Plaintiffs of being criminals, simply because of the color of their skin[.]"). Plaintiffs offer no evidence of racial discrimination beyond two broad assumptions: 1) that the alleged statement that Defendants feared Plaintiffs might be "cooking" in their room was a veiled reference to drug activity; and 2) that the statement was made only because of Plaintiffs' race. More than mere speculation and assumption is required "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Prince v. Overton*, Civ. No. SAG-25-00724, 2025 WL 3003680, at *5 (D. Md. Oct. 27, 2025) (dismissing a § 1981 claim where the plaintiff failed to plead "facts plausibly suggesting that he received unequal service on the basis of his race"). Even if Plaintiffs conclude that there is no other reason for their treatment other than their race, the Fourth Circuit has held that "[b]eing aware of no alternative explanation and guessing that conduct is racially motivated does not amount to pleading actual facts to support a claim of racial discrimination." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020). Stated differently, Plaintiffs fail to allege direct evidence of discrimination and raise little more than the vague allegation that race "may have played some role, or even been a motivating factor" in their treatment. *Nadendla v. WakeMed*, 2021 WL 1056521, at *2 (E.D.N.C. Feb. 23, 2021). More is required to nudge a §1981 claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.[3]

---

[3] Even assuming the police report and other documents attached to the amended complaint are "integral" to the allegations can be considered, they do nothing to further Plaintiffs' claim of racial discrimination. Indeed, the police report makes no mention of allegations of racial discrimination and notes only that Aairah Ford "was offended by the condescending nature of Johnson and [Ford] felt verbally attacked by Johnson." ECF 16-2, at 2. Similarly, the observation that a police officer inquired into whether Plaintiffs thought the incident was "racially motivated," ECF 16, at 6 ¶ 22, was merely a question and fails to transform the allegations of race discrimination into something "'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" *Swaso*, 698 F. App'x at 747 (quoting *Twombly*, 550 U.S. at 555).

The Court is mindful of the fact that "[r]ace-based . . . animosity can be shown by direct evidence of discrimination, or differential treatment of similarly situated . . . white [customers]." *McNeil v. Loyola Univ.*, Civ. No. WDQ-13-1473, 2014 WL 320494, at *9 (D. Md. Jan. 27, 2014). Regardless, Plaintiffs offer no proposed comparators that would suggest that their treatment at the Red Roof Inn was different than customers of different races. Plaintiffs do not allege that they were "denied accommodations that were available to guests outside of the protected class." *Murrell*, 262 F. 3d at 257; *see also Lemon v. Myers Bigel, P.A.*, 985 F.3d 392, 400 (4th Cir. 2021) ("Because in the absence of plausible allegations that, for example, [] white partners were similarly situated, such an allegation indicates only that [the plaintiff] was treated differently, not that she was treated differently *because of* her race."); *Prince*, 2025 WL 3003680, at *5 (noting no allegations "that white patrons received materially faster or meaningfully cheerier service or that their orders were delivered entirely free of mistakes."). The repeated refrain that Plaintiffs were treated the way they were *because of* their race "is simply too conclusory" and "[o]nly speculation can fill the gaps in [Plaintiffs'] complaint[.]" *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 586 (4th Cir. 2015). Dismissal of Plaintiffs' § 1981 claim is required.[4]

---

[4] Defendants appear to argue that Plaintiffs' discrimination claims must be dismissed because they fail to "assert a prima facie case of racial discrimination" as required under "the *McDonnell Douglas* test." ECF 29-1, at 5-6 (citing *Grant v. Atlas Rest. Grp. LLC*, 2024, 2024, U.S. Dist. LEXIS 21100, *7 (D. Md. 2024)). Despite Defendants' assertions, the Court is mindful of the fact that a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss[.]" *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017). Though the *McDonnell Douglas* framework serves "to inform a court's evaluation of the allegations," *Hart v. Lew*, 973 F. Supp. 2d 561, 580 (D. Md. 2013), the Court dismisses both claims because they fail to "meet the standard established in *Iqbal* and *Twombly*," *McGill v. Koros, LLC*, Civ. No. JKB-20-03191, 2021 WL 4170402, at *6 (D. Md. Sept. 14, 2021).

As to Plaintiffs' Title II claim, "[t]his Court has applied the same framework for analyzing discrimination claims under both Title II and Section 1981, thus typically dismissing the Title II claim if the Section 1981 claim has already been dismissed." *Univ. of Md. E. Shore Nat'l Alumni Ass'n, Inc. v. Schulte Hospitality Grp., Inc.*, Civ. No. RDB-23-2141, 2024 WL 3424088, at *9 (D. Md. July 15, 2024) (citing *Sherman v. Marriott Hotel Servs., Inc.*, 317 F. Supp. 2d 609, 616 (D. Md. 2004) and *Callwood v. Dave & Buster's, Inc.*, 98 F. Supp. 2d 694, 721 (D. Md. 2000)). Having dismissed Plaintiffs' § 1981 claim, the Court will likewise dismiss Plaintiffs Title II claim for the same reasons.[5]

The Court has broad discretion to dismiss claims with or without prejudice. *Weigel v. Maryland*, 950 F. Supp. 2d 811, 826 (D. Md. 2013) (citing *180s, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638–39 (D. Md. 2009)). When a plaintiff has not had the opportunity to amend a complaint, "the dismissal should generally be without prejudice." *King v. Rubenstein*, 825 F.3d 206, 225 (4th Cir. 2016). However, where, as here, "the plaintiff amended the pleading and the

---

[5] Though the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, including the claim alleging racial discrimination under Md. Code Ann., State Gov't § 20-304, Maryland law does not permit a private right of action under this state statute. Section 20-304 provides that "[a]n owner or operator of a place of public accommodation . . . may not refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, or privileges of the place of public accommodation because of the person's race[.]" However, state law holds that a patron who alleges discrimination in public accommodations "may file a complaint" with the Maryland Commission on Civil Rights, which is permitted to issue a complaint against the alleged perpetrator of discrimination "on its own motion." Md. Code Ann., State Gov't § 20-1004. "Although the statute expressly provides the right to file a civil action to individuals subject to employment discrimination . . . and discrimination in housing practices . . . there is no comparable provision providing a private right of action for claims of discrimination in public accommodations." *M.R. by & Through N.R. v. Tajdar*, Civ. No. TDC-17-3836, 2018 WL 6050888, at *5 (D. Md. Nov. 19, 2018) (citations omitted). "[T]hus, Maryland anti-discrimination statutes do not authorize a private individual to file a civil action in court regarding disability discrimination in public accommodations." *Id.*; *see also Prince*, 2025 WL 1331907, at *2 ("[I]t is evident that the legislature created no private right of action for persons in Plaintiff's position, and his only recourse rests with the Maryland Commission on Civil Rights.").

10

defects nonetheless remain, dismissal with prejudice is warranted." *Ghorbani et al. v. Barron et al.*, Civ. No. 8:24-CV-03268-PX, 2025 WL 3466877, at *3 (D. Md. Dec. 3, 2025) (citing *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)). Despite several attempts at articulating viable allegations of racial discrimination, Plaintiffs have failed to "raise a right to relief above the speculative level" and have not articulated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Even after attaching police reports and other documentation to their amended complaint (and incorporating those documents, as well as a 911 call, into their arguments against dismissal), Plaintiffs have failed to cure the glaring defects in their allegations of race-based discrimination. The Court need not grant Plaintiffs another attempt at amending the complaint to re-allege federal claims as it would be futile. *See Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (finding no abuse of discretion in dismissing complaint with prejudice where "amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability"). Plaintiffs' claims under Title II and Section 1981 are therefore dismissed with prejudice.

### B. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims.

Plaintiffs allege that "[j]urisdiction is proper [in federal court] under 28 U.S.C. § 1331 as this matter involves claims of racial discrimination and violation of civil rights under federal law including Title VII[6] of the Civil Right Act of 1964 (42 U.S.C. § 2000e et seq.) and Section 1981 of the Civil Rights Act of 1866 (42 U.S.C. § 1981[)], as well as supplemental state claims." ECF 16, at 3 ¶ 2. In filing their original complaint, Plaintiffs noted that jurisdiction was proper in federal

---

[6] Plaintiffs' reference to Title VII appears to be an error as Plaintiffs' claims lie in Title II (and 42 U.S.C. § 1981). *See* ECF 16, at 7 ¶ 33.

11

court solely due to "federal question jurisdiction." ECF 1-1, at 1 (Civil Cover Sheet).[7] Having disposed of all of Plaintiffs' federal claims, the Court must turn to the question of whether to continue to exercise jurisdiction over any remaining state law claims, namely those alleging discrimination under state law (the remainder of Count I), intentional infliction of emotional distress (Count II), state law negligence (Count III), false statements to law enforcement (Count IV),[8] breach of contract (Count V), defamation (Count VI), obstruction of justice (Count VII), and conversion (Count VIII).

Federal courts "are courts of limited jurisdiction." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025). "Congress determines, through its grants of jurisdiction, which suits those courts can resolve." *Id.* "And of special importance here, Congress has long

---

[7] Plaintiffs make no claim that the court has "diversity jurisdiction" over this case pursuant to 28 U.S.C. § 1332(a)(1). To the contrary, Plaintiffs note that all Defendants "reside" in Maryland. ECF 1-1, at 1. Even if Plaintiffs were to allege that Red Roof Inn was a citizen of another state, jurisdiction still would not lie as diversity jurisdiction requires "complete diversity," meaning that "no party shares common citizenship with any party on the other side." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir.1999) (internal citation omitted). Since Plaintiffs, Johnson, Randle, and Ross all appear to be Maryland citizens, diversity jurisdiction would not lie regardless of the corporate defendant's citizenship.

[8] To the extent Plaintiff allege that their claims alleging violations of state criminal law are somehow cognizable in federal court, they provide no basis for that conclusion. Nor could they. As is well-established, "'[u]nless there is a clear [legislative] intent to provide a civil remedy, a plaintiff cannot recover civil damages for an alleged violation of a criminal statute.'" *United States ex rel. Angel v. Scott*, 697 F. Supp. 3d 483, 490 (E.D. Va. 2023) (citing *Brown v. Clements*, No. 15-cv-104, 2015 WL 5677296, at *9 (E.D. Va. Sept. 23, 2015)) (alterations in original). "A bare criminal statute provides for no express civil remedy." *Id.* (quotation and citation omitted). Additionally, the decision of whether to prosecute, and what criminal charges to bring, generally rests with the prosecutor. *Shahin v. Darling*, 606 F. Supp. 2d 525, 538 (D. Del. 2009) (citing *United States v. Batchelder*, 442 U.S. 114, 124 (1979)); *see also Smith v. Shaw*, Civ. No. 09-1001, 2012 WL 1832340, at *1 (S.D.W. Va. April 25, 2012) ("Plaintiff has no right to initiate criminal proceedings against Defendant."). Plaintiff purports to bring civil claims under state criminal statutes, namely Md. Code. Crim. Law § 9-501 (Count 4) and Md. Code Crim. Law § 9-306 (Count 7). These statutes do not provide private causes of action. Accordingly, these claims, if somehow raised under federal law, would nonetheless be dismissed. *See Moore v. Scott*, Civ. No. 24-2210-BAH, 2024 WL 4529268, at *3 (D. Md. Oct. 18, 2024).

conferred jurisdiction on federal courts to resolve cases 'arising under' federal law. § 1331." *Id.*; *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). And while a federal court "may exercise supplemental jurisdiction over [companion] state claim[s] so long as [they] 'derive from' the same 'nucleus of operative fact' as the federal one," "[t]hat derivative jurisdiction . . . is to some extent discretionary[.]" *Id.* (first citing *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) then citing 28 U.S.C. § 1367). Under 28 U.S.C. § 1367(c), a district court may "decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

The Fourth Circuit has noted "that trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). Among the factors to consider in deciding whether to retain jurisdiction over state law claims are "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id.* (citing *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon*, 484 U.S. at 350 (citing *Gibbs*, 383 U.S. at 726–27). "There are *no* situations wherein a federal court *must* retain jurisdiction over a state law claim, which would not by itself support jurisdiction." *Shanaghan*, 58 F.3d at 110 (emphasis in original).

The Court has reviewed the relevant factors outlined in *Shanaghan* and finds that they favor dismissal of all remaining state law claims. First, the matter has not progressed to discovery and

thus dismissal at this early stage will not waste judicial resources or result in unfairness to either party.[9] Moreover, having found that Plaintiffs' federal claims alleging racial discrimination are wholly conclusory, what remains is a dispute between Plaintiffs and defendants entirely grounded in state law. *Shanaghan*, 58 F.3d at 110 ("[T]he jurisdictional basis of the action [has] fade[d] away and the court is left with what would otherwise be a state law case."). "Put simply, the Constitution does not contemplate the federal judiciary deciding issues of state law among non-diverse litigants." *Lovern v. Edwards*, 190 F.3d 648, 655 (4th Cir. 1999). Retaining jurisdiction to opine on Plaintiffs myriad state law claims would not heed the Supreme Court's admonition that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Gibbs*, 383 U.S. at 726. Since "it appears that the state issues substantially predominate, [both] in terms of proof, of the scope of the issues raised, [and because] the comprehensiveness of the remedy sought, the state claims [are] dismissed without prejudice and left for resolution to state tribunals." *Id.* (alterations added).

## IV. CONCLUSION

In light of the foregoing, it is hereby **ORDERED** that:

(1) Defendants' motion to dismiss the amended complaint, ECF 29, is **GRANTED**;

---

[9] Plaintiffs will not suffer any financial loss as they were permitted to proceed in forma pauperis and thus did not have to pay a filing fee and service was effectuated by the U.S. Marshal pursuant to Fed. R. Civ. P. 4(c)(3). *See* ECF 8, at 1. Plus, to the extent Plaintiffs attempt to argue that the matter is not at an early stage, the Court notes that the litigation has been extended primarily due to Plaintiffs who have amended their complaint, opposed Defendants' request for short extensions to deadlines, *see* ECF 24, and sought sanctions on a basis the Court found likely to be improper, *see* ECF 40, at 3. Plaintiffs have the right to litigate their case as they see fit, and the Court, of course, takes no position on the decision to amend pleadings, to oppose continuances, or, if proper, to seek sanctions. However, the fact remains that these tactics have resulted in any arguable delay in the progression of this case. As to inconvenience to Defendants, their arguments as to the viability of all state law claims are well briefed and need little, if any, modification to be raised again in state court (if that proves necessary). *See* ECF 29-1, at 10–21.

(2) The violations of Title II and 42 U.S.C. § 1981 alleged in Count I are dismissed with prejudice as are any federal claims resting in the alleged violation of state criminal law as alleged in Counts IV and VII; and

(3) The remaining state law claims alleging discrimination (Count I); intentional infliction of emotional distress against Johnson and Randle (Count II); negligence as to all Defendants (Count III); false statements to law enforcement in violation of Md. Code Ann., Crim. Law § 9-501, against Johnson and Randle (Count IV); breach of contract against Red Roof Inn (Count V); defamation against Johnson and Randle (Count VI); obstruction of justice in violation of Md. Code Ann., Crim. Law § 9-306, against Johnson and Randle (Count VII); and conversion against Red Roof Inn (Count VIII) are dismissed without prejudice dismissed to be raised again, if ever, before the proper state tribunal.

A separate implementing order will issue.

Dated: December 16, 2025

/s/
Brendan A. Hurson
United States District Judge